UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRENCE RAY AND KERVIN ALEMAN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS<br><br>v.<br><br>ADC and T LLC, ITS AFFILIATES AND AGENTS,<br><br>DEFENDANTS | § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:25-cv-2159<br><br><br>JURY DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs Terrence Ray and Kervin Aleman, individually and on behalf of a Class of all others similarly situated ("Plaintiffs"), bring this action against Defendant ADC and T, LLC, their direct and/or indirect affiliates, and their respective agents ("Defendants"). Plaintiffs and Class Members leased trailers or box chassis from and transported freight for Defendants as independent truck drivers. Defendants are federally regulated motor carriers that utilized Plaintiffs and the Class Members to transport freight within the State of Texas.

On behalf of themselves and all others similarly situated, Plaintiffs seek declaratory, injunctive, and monetary relief and allege as follows:

### NATURE OF THE ACTION

1. This action is a class action brought to recover damages sustained by Plaintiffs and Class Members as a result of Defendants' violations of the Federal Motor Carrier Safety Administration's "Truth in Leasing" regulations.

2. Plaintiffs and Class Members are independent truck drivers known as owner-operators. Owner-operators are small businessmen and women who own or control motor vehicle equipment (hereinafter "a truck" or "the truck") used to transport freight over the nation's highways.

3. Owner-operators lease or otherwise provide trucks and other equipment and services to federally regulated motor carriers that have the requisite legal operating authority under United States Department of Transportation ("DOT") regulations to enter into contracts with shippers for the transport of property. By leasing their trucks and other equipment and services to the motor carriers, the owner-operators effectively operate under the motor carrier's operating authority.

4. Collectively, Defendants are engaged in the business of transporting property in trucks owned by owner-operators, including Plaintiffs and Class Members. Defendants lease box chassis to the owner-operators for use in interstate and intrastate transport of Defendants' freight.

5. Defendants are federally regulated motor carriers under authority issued by the DOT (US DOT No. 3430218, Docket No. MC-1111156).

6. Defendants damaged Plaintiffs and Class Members by violating federal laws and regulations.

7. The relationship between owner-operators and regulated motor carriers is generally regulated by the DOT under 49 U.S.C. § 14102 et seq. and 49 C.F.R. Part 376. Under federal law and regulations, authorized motor carriers like Defendants may provide authorized transportation in equipment they do not own only if that equipment is covered by a written lease meeting the requirements set forth by 49 U.S.C. § 14102 and by regulation, including the written lease requirements set forth in 49 C.F.R. § 376.12. The required lease in this matter is titled "Trip Lease Agreement" and is attached hereto as Exhibit A. The contract in which the owner operators agree

to lease Defendants' box chassis in order to transport loads for Defendants is titled "Equipment Rental Agreement" and is attached hereto as Exhibit B.

8. A person damaged by an authorized carrier's failure to comply with the federal leasing regulations may bring an action seeking injunctive relief and damages pursuant to 49 U.S.C. § 14704(a)(l) and (2) and may recover attorney's fees under 49 U.S.C. § 14704(e).

9. During all times material to this case, Defendants are and have been an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a).

## JURISDICTION AND VENUE

10. 49 U.S.C. § 14704(a)(2) grants a private cause of action for violations of Truth-in-Leasing regulations.

11. The causes of action alleged herein arise under the laws of the United States regulating commerce and the activities of motor carriers engaged in the transportation of property in interstate commerce, including 49 U.S.C. §§ 13501, 14102 and 14704(a)(l) and (2), and 49 C.F.R. Part 376. Jurisdiction over this matter is granted to this Court by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337 (proceedings arising under an Act of Congress regulating commerce).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 139l(b). Defendants maintain their principal place of business within this Judicial District. Further, a substantial part of the events giving rise to the claims raised herein occurred within this district.

## PARTIES

13. Plaintiffs Terrence Ray and Kervin Aleman are residents of the State of Texas and the State of Florida, respectively. Both are experienced truck drivers and owner-operators. Like each of the similarly situated members of the potential Class, Ray and Aleman, as lessees, contracted with

Defendants to lease box chassis from Defendants in a document prepared by Defendants entitled "Equipment Rental Agreement." Exhibit B. Plaintiffs also entered into a "Trip Lease Agreement" under which Defendants leased Ray and Aleman's trucks and any drivers as part of Defendants' agreement to compensate Plaintiffs for each load they hauled on behalf of Defendants. Exhibit A.

14.     Defendant ADT and C LLC is a Texas limited liability company which may be served by serving its resident agent, Aubrey Clark, at 3303 Agate Trail, Forney, Texas 75126.

15.     ADT and C LLC is a federally regulated motor carrier engaged in the interstate and intrastate transport of freight. ADT and C LLC's principal place of business is located in Kaufman County, Texas.

## CLASS ACTION ALLEGATIONS

16.     Plaintiffs bring this action on behalf of themselves and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the members of the following Plaintiffs' Class:

> All persons, including entities, who operated under an Equipment Lease Agreement and a Trip Lease Agreement with Defendants between August 8, 2021, and the present.

17.     The prerequisites of Fed. R. Civ. P. 23(a) are satisfied:

    a.     Numerosity: Plaintiffs believe there are over 100 owner-operators who are members of this Class, the exact number and their identities being known to Defendants. These owner-operators, who are residents of various states, travel continuously and are, therefore, widely dispersed geographically. Thus, joinder of all potential Class Members would be impracticable.

    b.     Common Questions Predominate: There are questions of law and fact common to the Class, including, but not limited to:

1. Whether the Trip Lease Agreement, as drafted by Defendants and signed by Plaintiffs and Class Members, violates federal Truth in Leasing regulations.

2. Whether the "Incidental fee" charged to the Plaintiffs and the Class is an unlawful chargeback under the Truth in Lending Act;

3. The terms of contracts between Defendants and Plaintiffs and Class Members;

4. The amounts and nature of deductions made from the Plaintiffs' and Class Members' earnings;

5. Whether Defendants withheld escrow funds upon termination for all Plaintiffs and Class Members, and if so, whether such withholdings were proper;

6. Whether the "Incidental fee" was charged to all class members;

7. Whether Defendants ever explained to Plaintiffs and Class Members the nature of the "Incidental fee," including what it was, or how it was calculated;

8. Whether Defendants made any of the required disclosures under 49 C.F.R. § 376.12(k) to Plaintiffs and Class Members; and

9. Whether Defendants ever explained to Plaintiffs and Class Members the reason(s) for withholding the escrow amounts, including providing justification for how such withholding was calculated.

c. Typicality: Plaintiffs' claims are typical of the claims of the members of the Plaintiff Class because Plaintiffs, like each Class member, contracted with Defendants by signing a Trip Lease Agreement and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class.

d. Fair and Adequate Representation: Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Class and Plaintiffs have retained counsel competent and experienced in the prosecution of class actions to represent themselves and the Class.

### Class Certification is Appropriate Under Rule 23(b)(2):

18. Defendants have acted and/or failed to act on grounds generally applicable to the potential Class as a whole, as described further herein. Thus, injunctive and declaratory relief is appropriate with respect to the potential Class as a whole, making class certification appropriate under Fed. R. Civ. P. 23(b)(2). Further, the restitutionary relief sought is incidental to the requested declaratory and injunctive relief because it:

    a. Will flow directly to the entire Class from the requested declaration of regulatory violations;

    b. Is capable of computation by reference only to objective standards;

    c. Is capable of computation without reference to intangible, subjective differences between Class Members;

    d. Does not introduce new and substantial legal or factual issues;

    e. Can be calculated (through use of standardized formulas or restitution grids) by reference to data readily available within Defendants' normal business records; and

    f. Will not require additional member-specific hearings.

### Class Certification is Appropriate Under Rule 23(b)(3):

19. The questions of law and fact enumerated in the counts below are common to all Class Members, and they predominate over any questions affecting only individual members. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

20. Additionally, individual joinder of all damaged Class Members is impractical, and prosecution as a class action will eliminate the possibility of repetitious litigation. The damages sought herein suffered by individual class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Absent a class action, it would not be feasible for Class Members to seek redress for the violations of law herein alleged. Further, individual litigation presents the potential for inconsistent or contradictory judgments and

would greatly magnify the delay and expense to all parties and to the court system. Therefore, a class action presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

## GENERAL FACTUAL ALLEGATIONS

**The Contractual Structure of Defendants' and Plaintiffs'/Class Members' Relationship**

21. As owner-operators, Plaintiffs and each Class member entered into multiple contracts with Defendants.

22. The first contract Plaintiffs and Class Members entered into with Defendants, titled the "Equipment Lease Agreement," is an agreement pursuant to which Plaintiffs and Class Members leased box chassis from Defendants. A model of the Equipment Lease Agreement entered into by and between Defendants and the Plaintiffs, which is typical of each Class Member's Equipment Lease Agreement with Defendants, attached as Exhibit B, is incorporated herein by reference.

23. Plaintiffs and the Class Members entered into a second written agreement with Defendants, titled the "Trip Lease Agreement," pursuant to which Plaintiffs and the Class Members leased one or more trucks and the services of a qualified driver or drivers to Defendants as a carrier in the transport of property, and in exchange, Defendants agreed to pay Plaintiffs and the Class Members for transporting loads on their behalf. A copy of this agreement is attached as Exhibit A and is incorporated herein by reference.

24. Pursuant to the Trip Lease Agreement, Plaintiffs and Class Members, on behalf of and at the direction of Defendants, transport and deliver property from pick-up points to points of delivery. Plaintiffs and Class Members are generally compensated based on a flat rate per mile. Plaintiffs and Class Members receive their sole payment in the form of "settlement checks" issued to Plaintiffs and Class Members by Defendants, usually on a weekly basis.

25. The terms and conditions of the Trip Lease Agreement are regulated under 49 C.F.R. § 376 et seq. because the Trip Lease Agreement constitutes a "lease" within the meaning of 49 C.F.R. § 376.2(e).

26. The Trip Lease Agreement does not meet the requirements of 49 C.F.R. § 376.12. Numerous terms required by § 376.12 to be set forth in such an agreement are not contained in the Trip Lease Agreement.

27. For example, 49 C.F.R. § 376.12(h) requires the Trip Lease Agreement set forth all items that may be initially paid for by Defendants but ultimately deducted from Plaintiffs' and Class Members' compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. Despite the requirements of § 376.12(h), Defendants do not set forth in the Trip Lease Agreement a number of items that they ultimately deduct from Plaintiffs' and Class Members' compensation, including, but not limited to, fees cryptically described as "Incidental fees." Defendants further fail to comply with 49 C.F.R. § 376.12(h) by failing to provide any recitation or explanation as to how the amount of each deduction, including but not limited to those amounts deducted for "Incidental fees," is or was to be computed.

28. Defendants typically deducted $300 per week for "Incidental fees."

29. Further, in direct contravention of 49 C.F.R. § 376.12(h), Defendants did not provide Plaintiffs and Class Members copies of those documents necessary to determine the validity of the charges Defendants deducted from Plaintiffs' and Class Members' compensation, including, but not limited to, amounts deducted as "Incidental fees."

30. Further, at lease inception, Plaintiffs and Class Members were required to pay escrow deposits calculated by mile or flat amounts. Escrow funds were held by Defendants, but

Defendants failed to include any of the six required disclosures in the lease, in violation of 49 C.F.R. § 376.12(k), which requires the following as it relates to escrow deposits:

> (k)(1): The lease must specify the amount of the escrow fund that the lessor must pay to the carrier or third party;
>
> (k)(2): The least must specify the specific purposes for which the escrow fund may be used;
>
> (k)(3): The carrier must provide the lessor with an accounting of all escrow transactions, either on individual settlement sheets or via a separate monthly statement;
>
> (k)(4): The lessor must have the explicit right to request an accounting of escrow activity at any time;
>
> (k)(5): The carrier must pay interest on the escrow fund at least quarterly, computed on the adjusted balance (less average advances), at a rate no less than the weekly auction yield on 91-day Treasury bills;
>
> (k)(6): The lease must describe the conditions for the escrow's return, allow deductions for specified obligations, require a final accounting, and ensure the escrow is returned no later than 45 days after lease termination.

31.     Indeed, no part of the Trip Lease Agreement even discusses escrow. As a result of Defendants' conduct, Plaintiffs and the Class Members have incurred economic injury: they received no accounting, no interest, and did not recover withheld escrow funds timely or at all.

### Plaintiffs'/Class Members' Damages Due to Defendants' Actions

32.     Defendants' actions damaged Plaintiffs and Class Members both economically and non-economically.

33.     Defendants have engaged in a pattern and practice of ignoring their obligations under 49 C.F.R. Part 376, resulting in violations of those regulations and damages to Plaintiffs and Class Members.

## COUNT I - UNLAWFUL CHARGE BACKS – "INCIDENTAL FEES"

### (in violation of 49 C.F.R. § 376.12(h))

34. Plaintiffs restate and incorporate by reference paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. 49 C.F.R. § 376.12(k) requires that "[t]he lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed."

36. The Trip Lease Agreement Plaintiffs and Class Members signed with Defendants does not specify that generic "Incidental Fees" without explanation or documentation may be deducted from Plaintiffs' and Class Members' compensation at the time of payment or settlement.

37. Defendants unlawfully made deductions from Plaintiffs' and Class Members' compensation for unexplained and unsupported "Incidental Fees."

38. As a direct and proximate result of Defendants' violations of 49 C.F.R. § 376.12(h), Plaintiffs and Class Members have suffered financial injury, and Defendants have been unjustly enriched.

## COUNT II - UNLAWFUL RETENTION OF ESCROW FUNDS

### (in violation of 49 C.F.R. § 376.12(k))

39. Plaintiffs restate and incorporate by reference paragraphs 1 through 39 of this Complaint as if fully set forth herein.

40. Escrow funds were held (and ultimately diverted) by Defendants, but Defendants failed to make any of the six required disclosures in the lease relating to escrow funds, in violation of 49 C.F.R. § 376.12(k), in that Defendants' lease lacked the following:

(k)(1): No specified amount or beneficiary;

(k)(2): No defined permissible uses;

(k)(3): No required transaction accounting during the term of the lease;

(k)(4): No contractual right for Plaintiffs to demand accounting;

(k)(5): No interest paid (quarterly or otherwise);

(k)(6): No conditions for return, no final accounting, and no timely return within 45 days.

41. Defendants' lease terms are void and unenforceable per *Swift Transport* and *Arctic Express*, which interpret (k)(1)–(6) as mandatory disclosures and binding obligations. *See In re Arctic Exp. Inc.*, 636 F.3d 781, 796 (6th Cir. 2011).[1] Indeed, the Sixth Circuit in *In re Arctic Ex. Inc.* concluded that a fiduciary relationship existed between the carrier and the owner-operators with respect to escrow funds.

42. The Trip Lease Agreement Plaintiffs and Class Members signed with Defendants does not even address escrow funds.

43. Defendants unlawfully made deductions from Plaintiffs' and Class Members' compensation by unlawfully retaining escrow funds. Defendant's withholding of escrow caused Plaintiffs to suffer actual economic damages via deprived funds, lost interest, and blocked access to accounting required under (k)(3)–(6).

44. As a direct and proximate result of Defendants' violations of 49 C.F.R. § 376.12(h), Plaintiffs and Class Members have suffered financial injury, and Defendants have been unjustly enriched.

---

[1] Congress's substantive purpose in authorizing the Motor Carrier Act's Truth–in–Leasing regulations was to protect owner-operators of truck equipment by requiring certain terms to be included in every lease between motor carriers and owner-operators, and also requiring the return of escrow deposits to the owner-operators within 45 days after termination of the leasing arrangement.

45.     Defendants have violated the Truth-in-Leasing regulations as set forth above, including failure to make any disclosures at all about escrow funds, improper withholding of escrow funds, failure to return or accrue interest on escrow funds, imposition of unexplained and unsupported "Incidental fees," improper non-disclosure of contract terms, and refusal to provide required information and documentation as set forth in more detail above.

46.     The terms of Defendants' contracts with Plaintiffs and the Class Member drivers did not adhere to the Truth-in-Leasing regulations, and Defendants did not adhere to the terms of the contracts.  Pursuant to 49 U.S.C. § 14704(a), Defendants are liable to Plaintiffs and other similarly situated lease drivers for the damages that they have suffered on account of Defendants' violations of the Truth-in-Leasing regulations and are also liable for injunctive relief to remedy those violations.

WHEREFORE, based on the foregoing, Plaintiffs, on behalf of themselves and on behalf of Class Members, pray for judgment in their favor and against Defendants on Count I and Count II of this Class Action Complaint; for declaratory judgment that Defendants' acts and practices violate the Truth in Leasing regulations set forth in 49 C.F.R. Part 376; for an injunction or restraining order against Defendants to prevent further violations of the Truth in Leasing regulations; for damages; for reasonable attorney fees; for costs; and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

WELMAKER LAW, PLLC

*/s/  Douglas B. Welmaker*
Douglas B. Welmaker
Attorney-in-Charge
State Bar No. 00788641
Welmaker Law, PLLC
505 E. Magrill ST.
Longview, Texas 75601
Phone: (512) 799-2048
Email: doug@welmakerlaw.com

**ATTORNEY FOR PLAINTIFFS**